IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action 1:14-cv-02109-WYD-NYW

ANTHONY WALLER,

        Plaintiff,

v

CITY AND COUNTY OF DENVER, a municipal corporation,
BRADY LOVINGIER, individually and in her official capacity, and
GINA MCCALL, individually and in her official capacity,

        Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Nina Y. Wang

    This matter comes before the court on Defendant Brady Lovingier's ("Defendant Lovingier" or "Detective Lovingier") Motion to Dismiss [#21], filed on September 10, 2014; Defendants City of and County of Denver (the "City") and Gina McCall's ("Defendant McCall") Motion to Dismiss and Strike Portions of the Complaint [#22], filed on September 10, 2014 (collectively with Defendant Lovingier's Motion, Defendants' "Motions to Dismiss");  and Plaintiff Anthony Waller's (also "Mr. Waller" or "Plaintiff") Motion for Leave to File Amended Complaint [#46], filed November 13, 2015 (the "Motion for Leave to Amend") (collectively with Defendants' Motions to Dismiss, the "Motions").  Pursuant to the Order of Reference dated July 30, 2014 [#5] and the Memoranda dated November 13, 2014 [#48] and March 5, 2015 [#87], the Motions are before this Magistrate Judge.

The court has carefully considered the motions and related briefing, the parties'
arguments at the March 3, 2015 motions hearing, and the applicable case law.  For the following
reasons, I respectfully RECOMMEND that:

(1)     Defendants McCall and the City and County of Denver be GRANTED;

(2)     Defendant Lovingier's Motion to Dismiss be GRANTED;

(3)     Plaintiff's Motion for Leave to Amend be GRANTED IN PART, and DENIED
        IN PART to permit Plaintiff to assert claims for excessive force and retaliation
        based on the exercise of First Amendment rights; and

(4)     Plaintiff be ORDERED to file a Second Amended Complaint consistent with this
        ruling, to which Defendant Lovingier will answer or otherwise respond.

## BACKGROUND

### I.     Plaintiff's Original Complaint

Plaintiff Anthony Waller filed his original and operative Complaint (the "Original
Complaint") in this matter on July 30, 2014.  [#1].  The following is a summary and recitation of
the allegations contained in Plaintiff's Original Complaint, which are presumed to be true for the
purposes of Defendants' Motions to Dismiss.

On September 11, 2012, Mr. Waller was in pre-trial detention.  [*Id.* at ¶¶ 2, 13].  That
same day, Defendant Lovingier, a deputy in the City's Sherriff's Department, escorted Mr.
Waller to an advisement hearing before Judge Doris Burd of the Denver County Court.  [*Id.* at ¶
13].  Mr. Waller was restrained by "handcuffs, leg irons and a belly chain all of which were
joined in a box at Mr. Waller's waist."  [*Id.* at ¶ 15].  During the course of the advisement, Mr.
Waller interjected "I'd like to object to her (the alleged victim) story.  If I'm under investigation,
I thought the investigation came first, then the arrest came."  [*Id.* at ¶ 16].  Shortly thereafter and

"without warning, justification or provocation," Defendant Lovingier, "who was directly behind Mr. Waller, grabbed Plaintiff's belly chain and shirt, spun Mr. Waller around and threw him face first into the metal frame entrance into the glassed-in court prisoner detention area." [*Id.* at ¶ 17]. As Mr. Waller lay "moaning" on the courtroom floor, Defendant Lovingier directed Plaintiff to "Get up, get up, get up. Get on your feet.  You don't turn on me boy." [*Id.* at ¶ 22].  As a result of Defendant Lovingier's use of force, Mr. Waller was taken to the "Denver Health Medical Center to be treated for his injuries," which are said to have "included severe bodily injuries to his head, including a deep head laceration, closed head injury and left orbital blowout fracture and injuries to his back, neck, legs, arms, ankles, including a hernia and his teeth were knocked out." [*Id.* at ¶ 27].

After his alleged assault on Mr. Waller, Defendant Lovingier "contacted the Denver Police Department (DPD) to file criminal charges against Mr. Waller for resistance." [*Id.* at ¶ 28].  The DPD officers who responded to Defendant Lovingier's outreach declined to "press charges." [*Id.*]  Defendant McCall, a Captain in the City's Sheriff's Department, "subsequently called the DPD supervisor and demanded that a Denver police officer return to take the report and file criminal charges against the Plaintiff Mr. Waller." [*Id.*]  A criminal complaint was then filed against Mr. Waller.  [*Id.* at ¶ 29].  However, on October 8, 2015, the city attorney responsible for the criminal complaint against Mr. Waller filed a motion to dismiss the complaint.  [*Id.* at ¶ 30].  Defendant Lovingier was later formally sanctioned and disciplined for his use of excessive force against Mr. Waller.  [*Id.* at ¶¶ 31-37].

According to the Complaint, "Denver law enforcement officers have engaged in a persistent practice of use of excessive force, including failing to report, lying and cover ups and the officials responsible for assuring that such misconduct does not occur have consistently

failed to properly train, supervise, and discipline individual officers who have engaged in such misconduct and have failed to stop the use of excessive force by Denver law enforcement." [*Id.* at ¶ 50]. Much of the remainder of Plaintiff's Complaint consists of recitations of incidents purportedly involving uses of excessive force by officers belonging to either the Denver Sheriff's Department or the Denver Police Department pre-dating the alleged September 11, 2012 assault forming the gravamen of Plaintiff's Complaint. [*Id.* at ¶¶ 52-103].

Based on these allegations, Plaintiff asserted four claims pursuant to 42 U.S.C. § 1983, and a fifth conspiracy claim asserted pursuant to both 42 U.S.C. §§ 1983 and 1985. Mr. Waller's first claim for relief asserted excessive force claims arising under the Fourth, Eighth, and Fourteenth Amendments against Defendant Lovingier and the City relating to the September 11, 2012 assault. [*Id.* at ¶¶ 105-124]. As to the City, Plaintiff alleges that "Defendant Denver's failure to train, supervise, and/or discipline on matters of excessive force and use of force generally, as described herein, was a legal and proximate cause of Plaintiff's injuries."[1] [*Id.* at ¶ 116].

Plaintiff's second claim for relief against Defendant Lovingier and the City asserts that "Mr. Waller had a constitutional right under the Sixth Amendment to the United States Constitution to appear in court, to be advised of his rights including the right to be able to ask questions of the court without being brutally attacked, beaten and dragged from the courtroom" [*id.* at ¶ 125] which was breached by Mr. Lovingier's assault. [*Id.* at ¶¶ 124-142]. Plaintiff again asserts that "Defendant Denver failed to properly train, supervise and/or discipline its employees regarding use of excessive force and the constitutional rights of persons which continues to be

---

[1] Claims against municipal entities that are based on policies and practices that proximately cause constitutional injuries are often referred to as "*Monell* claims." *Monell v. Dept. of Social Servs. of the City of New York*, 436 U.S. 658 (1978).

the moving force and proximate cause of the violation of Mr. Waller's constitutional rights and the rights of other inmates." [*Id.* at ¶ 135].

Plaintiff's third claim for relief against the City for "Failure to Train, Supervise, and Discipline" reincorporates, recites, and reiterates Mr. Waller's theories of municipal liability as to the City. [*Id.* at ¶¶ 143-158].

Plaintiff's fourth claim for relief is for "malicious prosecution" under the Fourth, Fifth, Sixth, and Fourteenth amendments as against Defendant Lovingier, Defendant McCall, and the City. [*Id.* at ¶¶ 159-168]. The Complaint avers that Defendant Lovingier and Defendant McCall, prior to and/or in the course of recommending that criminal charges be brought against Mr. Waller, "conspired and/or acted in concert to institute criminal proceeding against the Plaintiff Mr. Waller without probable cause and sought to obtain a conviction against him in an attempt to insulate Defendants from scrutiny and potential criminal and civil liability." [*Id.* at 162]. Mr. Waller—who was already by his own account detained as of September 11, 2012— does not however at any point in his Complaint allege that he was ever seized, detained, or further detained as a result of the purported malicious prosecution. [*Id.* at ¶¶ 1-179].

Plaintiff's fifth claim for relief attempts to state a cause of action for "Conspiracy to Violate Civil Rights" under both 42 U.S.C. §§ 1983 and 1985. [*Id.* at ¶¶ 169-179]. According to the Complaint, "Defendants Lovingier and McCall did conspire and agree between and among themselves to a series of formal and informal policies and practices adopted by the Defendant, the City and County of Denver through its official and unofficial decision making channels to deny the Plaintiff and other African American/Black and/or Hispanic/Latinos of their rights, immunities, privileges and liberties as guaranteed by the laws and Constitution of the United States of America and the laws and Constitution of the State of Colorado and by Title 42 U.S.C.

§§ 1983 and 1985 . . ." [*Id.* at ¶ 170].  Plaintiff avers that, "as a result of these formal and informal policies and practices, Defendants Lovingier and McCall were allowed to assault and batter Mr. Waller, an African American/Black man, and prevent him from asking questions of the court and then to maliciously prosecute Mr. Waller on false charges to cover up the Defendants' constitutional violations." [*Id.* at ¶ 171].

Based on the misconduct alleged in his Complaint, Plaintiff seeks injunctive relief against the Denver Sheriff's Department. [*Id.* at ¶¶ 175-79 & Prayer for Relief].  According to Plaintiff, "[t]he use of excessive force by the Denver Sheriff's Department (DSD) and Denver Police Department (DPD) is a systemic problem, existing in Denver for decades," and "if an injunction is not entered irreparable injury will continue to be inflicted upon the citizens and persons with which the DSD and DPD have daily contact and they will suffer severe and substantial injuries similar to the Plaintiff." [*Id.* at ¶¶ 177, 179].

## II.    Plaintiff's Proposed Amended Complaint

On November 13, 2014, Plaintiff filed a motion for leave to amend his Original Complaint. [#46].  According to his opening moving papers, "Plaintiff seeks to amend the Complaint to voluntarily remove any allegations of excessive force by the Denver Police Department contained in ¶¶ 52, 59-73 and 75-103 of Plaintiff's Original Complaint [Claim I]; adding factual material to support Plaintiff's malicious prosecution [Claim IV] and conspiracy claims [Claim V]; and, adding Christopher Colbruno, who is currently incarcerated at the Denver Detention Center as a party Plaintiff." [*Id.* at 2].  The Proposed Amended Complaint also seeks to add a First Amendment retaliation theory of recovery based on Defendant Lovingier's alleged assault on Plaintiff, and to supplement Plaintiff's allegations of improper hiring by the City in support of Plaintiff's *Monell* claims.

As to Christopher Colbruno, the Proposed Amended Complaint alleges that on "September 4, 2013 Christopher Colbruno was arrested without a warrant by Denver police and was released to the DSD at the Denver Detention Center (DDC)."  [#47 at ¶ 7] (the "Proposed Amended Complaint").  During his confinement, "Mr. Colbruno was held for several hours and was required to sit in a chair."  [*Id.*]  Mr. Colbruno, who was "extremely tired and sleepy," was initially "forced to sit up" whenever he fell asleep.  [*Id.*]  Mr. Colbruno subsequently requested "to go to his cell so that he would lay down and sleep;" instead of complying with this request, unnamed officers in Denver Sheriff's Department "'crucified' [Mr. Colbruno] by [] hand-cuff[ing] [him] with each hand on opposite walls."  [*Id.*]  Mr. Colbruno "thrash[ed]" around in pain, "John Doe and Jane Doe deputy sheriffs restrained him in a 'restraint chair,'" and a deputy sheriff "slammed [Mr. Colbruno's] head into the arm of the chair causing a deep laceration above his left eyebrow."  [*Id.*]

Subsequently, "Plaintiff Colbruno has remained in custody at the DDC since September 4, 2013."  [*Id.* at ¶ 8].  According to the Proposed Amended Complaint, "[d]uring this time Mr. Colbruno has been subjected to multiple instance of use of excessive force and has been tased on several occasions, the last time approximately six months ago when he was in his jail cell and guards entered and shot him in the back with a taser."  [*Id.*]  At the hearing, defense counsel conceded that the individuals who were involved with Mr. Waller's alleged abuse were not the same as those who were alleged to have abused Mr. Colbruno.  Rather, counsel asserted that the nexus was the Denver Sheriff Department's systematic abuse of individuals in custody that warranted the amendment to include Mr. Colbruno.

# ANALYSIS

## I.      Standard of Review

As an initial matter, Plaintiff's Motion to Amend fails to provide any justification for the proposed amendments.   [#46].   Nor does Plaintiff comply with Local Rule of Practice 15.1, which requires a party filing an amended pleading to attach as an exhibit "a copy of the proposed amended pleading which strikes through (e.g. ~~strikes through~~) the text to be deleted and underlines (e.g. <u>underlines</u>) the text to be added."  D.C.COLO.LCivR 15.1(b).   It also appears counsel for Plaintiff failed to meet and confer meaningfully as to any proposed amendment in advance of filing the Motion to Amend, as required by Local Rule of Practice 7.1(a). [#60 at 3-4].   Each of these deficiencies is sufficient ground alone to strike Mr. Waller's Motion to Amend.   Nevertheless, in recognition of Rule 1's precept that civil actions should be adjudicated in a manner to secure just, speedy, and inexpensive determination of every action, Fed. R. Civ. P. 1, I address and respectfully recommend ruling substantively on all proposed amendments to the extent the court can discern them.  [#60 at 3-4].  In an attempt to organize this Recommendation, the court first addresses Plaintiff's request to include a second plaintiff, Christopher Calbruno, to the case.   Then, I consider whether Mr. Waller has stated a cognizable municipal claim against the City for any of the asserted claims.   Next, I take each cause of action against the individual Defendants Lovingier and McCall, in the order pled in the Original Complaint, *i.e.*, (1)  § 1983 claims based excessive force in violation of the Fourth, Eighth, and Fourteenth Amendments against Defendant Lovingier (and the City); (2) § 1983 claims based Sixth Amendment violations against Defendant Lovingier (and the City); (3) § 1983 claims of malicious prosecution against Defendants Lovingier, McCall (and the City); and (5) §§ 1983 and 1985 claims based on conspiracy against Defendants Lovingier, McCall (and the City). Where Mr.

Waller seeks to amend by adding additional facts to support existing claims, I have accounted for the additional factual allegations in analyzing the pending Motions to Dismiss to avoid another round of motions practice related to the pleadings.

### A.    Motion for Leave to Amend

The deadline for joinder of parties and amendment of pleadings was set for December 22, 2014. [#81].  Because Mr. Waller sought leave to amend prior to that deadline (but after the time period under Rule 15(a) (1) for amending as a matter of course), the court only considers whether leave should be granted under Rule 15(a)(2) of the Federal Rules of Civil Procedure.  *See Fernandez v. Bridgestone/Firestone, Inc.*, 105 F. Supp. 2d 1194, 1195 (D. Colo. 2000).  While Rule 15(a)(2) provides that leave shall be freely granted in the interests of justice, a court may deny a motion for leave to amend a complaint when the proposed amendment would be futile.  *See Jefferson County Sch. Dist. No. R-1 v. Moody's Investor's Services, Inc.*, 175 F.3d 848, 859 (10th Cir. 1999); *Corporate Stock Transfer, Inc. v. AE Biofuels, Inc.*, 663 F.Supp.2d 1056, 1061 (D. Colo. 2009).  The non-moving party bears the burden of showing that the proposed amendment is sought in bad faith, that it is futile, or that it would cause substantial prejudice, undue delay or injustice.  *Id.*

### B.    Motions to Dismiss

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant McCall and the City seek dismissal of the Original Complaint's claims as to Defendant McCall and dismissal of all claims as to the City on the ground that that the Original Complaint fails to state facts sufficient to support any form of municipal liability.  [#22].  Pursuant to Fed. R. Civ. P. 12(f), Defendant McCall and the City also seek to strike the Original Complaint's allegations as to the Denver Police Department.  [*Id.*].  Finally, pursuant to Fed. R. Civ. P. Rule 12(b)(1) and Article III of the Constitution, Defendant

McCall and the City seek dismissal of the Original Complaint's injunctive relief claims on the ground that Plaintiff does not have standing to pursue them before this court.  [*Id.*]

Defendant Lovingier seeks partial dismissal of the Original Complaint's first claim for relief for "excessive force" on the ground that such a claim as framed would be cognizable (if at all) only under the Fourteenth Amendment.  [#21 at 3].   Defendant Lovingier also seeks dismissal of the Original Complaint's second claim for relief for the alleged violation of Mr. Waller's Sixth Amendment rights [*id.*], dismissal of the Original Complaint's conspiracy count and allegations (Claim V) [*id.*], and a determination that Plaintiff's malicious prosecution claim (if cognizable at all) could arise only under the Fourth Amendment (Claim IV) [*id.*].

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding such a motion, the court must "accept as true all well pleaded factual allegations … and view these allegations in the light most favorable to the plaintiff."  *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). However, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*Twombly*).

Instead, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*Iqbal*).  As the Tenth Circuit explained in *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007), "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."  The plaintiff must frame a complaint with enough factual matter, when taken

as true, to suggest that he or she is entitled to relief. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombley*, 550 U.S. at 556). The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## II. Application to Plaintiff's Claims and Proposed Amendments

### A. Additional Plaintiff

The court first addresses whether Plaintiff may add Mr. Colbruno as an additional plaintiff to the action. In analyzing whether an effort to add new claims as to a new plaintiff would be futile, this court must turn to the requirements of Fed. R. Civ. P. 20(a)(2) as to permissive joinder. *MDM Group Associates, Inc. v. Midgett Realty, Inc.*, No. 07–cv–02543–WDM–CBS, 2008 WL 2756926 at *3 (D. Colo. July 14, 2008) (ruling on motion for leave complaint to add additional defendants). Under that Rule, joinder is permitted only if the plaintiffs "assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and in conjunction, "any question of law or fact common to all plaintiffs will arise in the action." *Id.*

Plaintiff's claims all arise from Defendant Lovingier's alleged assault on Plaintiff on September 11, 2012 in the Denver County Court., [#1 at ¶¶ 2, 13], and an ensuing alleged malicious prosecution that, by Plaintiff's own account, concluded less than a month later. [*Id.* at ¶ 30]. By contrast, Mr. Colbruno's claims arise out of alleged assaults by a number of unidentified Jane and John Doe defendants beginning nearly a year later in the fall of 2013 at the Denver Detention Center. [#47 at ¶¶ 54-67]. At oral argument, Plaintiff's counsel admitted that

there was no factual relationship between the incidents involving Mr. Waller and Mr. Colbruno, or the specific perpetrators of the alleged constitutional violations.

These new allegations plainly do not arise out of the "same transaction, occurrence, or series of transactions or occurrences," even though the same entity Defendant—the City—is implicated by the discrete purported wrongs alleged by Plaintiff and Mr. Colbruno. On this basis, I recommend that Plaintiff's Motion for Leave to Amend be denied to the extent leave is sought to add allegations concerning Mr. Colbruno. Indeed, I note that adjudicating Mr. Colbruno's claims in this proceeding threatens to multiply the burdens of this litigation, and could pose a risk of undue prejudice to the existing Defendants, particularly the individually named Defendants Lovingier and McCall, if the disparate claims asserted by Plaintiff and Mr. Colbruno are tried together.[2] As a result, I respectfully recommend that Mr. Waller's Motion to Amend to add Mr. Colbruno as a plaintiff be denied.

### B.    *Monnell* Claims Against the City:  Claims 1-5

As an initial matter, Plaintiff's Motion for Leave to Amend "seeks to amend the Complaint to voluntarily remove any allegations of excessive force by the Denver Police Department contained in ¶¶ 52, 59-73 and 75-103 of Plaintiff's Original Complaint." [#46, at 2]. The City does not object to the voluntarily removal of these allegations. [#60]. Accordingly, I recommend that leave to do so be granted, and I do not consider these allegations in evaluating the pending Motions to Dismiss.

The City argues that even when construed in light most favorable to Plaintiff, the complaint states no plausible ground for municipal liability for any claim, including but not

---

[2] In so ruling, the court does not pass on whether the facts as alleged by Mr. Colbruno in the proposed Amended Complaint state a cognizable claim, but simply that such allegations do not have a sufficient nexus to the claims asserted by Mr. Waller to be included in a single action.

limited to Claim III in the Original Complaint that is entitled "Failure to Train, Supervise and Discipline." [#1 at 41]. To prevail on a municipal liability claim, Plaintiff must establish (1) that a municipal employee committed a constitutional violation complained of, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation. *Myers v. Okla. Cnty. Bd. of Cnty. Commr's*, 151 F.3d 1313, 1316 (10th Cir. 1998). Such a municipal "policy or custom" could include (1) an officially promulgated policy; (2) a custom or persistent practice; (3) deliberately indifferent training that results in the violation of a plaintiff's federal protected rights; (4) a single decision by an official with final decision-making authority; or (5) ratification by an official with final decision-making authority of subordinates' decisions. *Brammer–Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189 (10th Cir. 2010).

Plaintiff's *Monell* claims against the City as stated in the Original Complaint appear to be grounded primarily in a purported failure by the City to properly "train, supervise and discipline" officers in the Sheriff's Department. [#22, at 11-12]. But Plaintiff's Original and Proposed Amended Complaints fail to allege specific, identifiable facts that are clearly linked to the alleged constitutional deprivations Plaintiff asserts to support a claim for excessive force based on a failure to train, supervise, and discipline (or of any other "policy or custom"). For example, Mr. Waller alleges, *inter alia*, that "Defendant Denver failed to properly train, supervise and discipline its employees and to otherwise monitor and protect inmates and avoid the use of excessive force" [#1, at ¶ 144] and that "[a]s a direct and proximate cause and consequence of Denver's failure to train, supervise and discipline, Plaintiff was denied his civil rights and Mr. Waller has sustained injuries including, but not limited to severe bodily injuries" [id. at 157].

In the Proposed Amended Complaint, Plaintiff seeks leave to add allegations that Defendant Lovingier was improperly hired as a result of nepotism, in an attempt to add "Failure

to Hire" as a basis for liability. [#46, ¶¶ 84-86; #47 at 30-31].   Standing alone or even coupled with Plaintiff's other factual assertions, Mr. Waller has still failed to state a cognizable *Monell* claim for inadequate hiring under Section 1983.  As held in *Board of the County Commissioners v. Brown*, 520 U.S. 397, 4411 (1997), in the context of claims asserting that a municipality failed to adequately screen a particular applicant, it is only in instances where the "plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right" that the "failure to adequately scrutinize the applicant's background constitute" would constitute the  "'deliberate indifference'" necessary to hold the municipality liable.  Simply put, Plaintiff's Proposed Amended Complaint fails to plead any facts at all to suggest that Defendant Lovinger's background was such that a decision to hire him (even if indeed motivated by nepotism) would as a "plainly obvious consequence" lead to the deprivation of any "third party's federally protected right."

Simply put, Mr. Waller provides insufficient factual support for his conclusory statements in either the Original or Proposed Amended Complaint to overcome the City's Motion to Dismiss and Opposition to the Motion for Leave to Amend with respect to deficient policies or practices with respect to hiring, training, supervising, or disciplining.  Bare allegations standing alone cannot support a plausible inference for either prong of the standard for municipal liability, *i.e.*, a specific municipal policy or custom that resulted in constitutional deprivations, or the existence of a direct causal link between the policy or custom and the injury alleged.  *See Rodriguez v. Chavez*, 2014 WL 4627274, * 4 (D. Colo. Sept. 16, 2014) (J. Brimmer) (citing *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010)).  Moreover, to the extent Plaintiff's Original and Proposed Amended Complaints reference purported deficiencies in the investigation of inmate grievances by the Denver Sheriff's Department,

14

*e.g.*[#1, at ¶¶ 38-47], no allegation links any such deficiency to the constitutional violations of which Mr. Waller complains.

Therefore, I respectfully recommend that Mr. Waller's municipal liability claims asserted pursuant to 42 U.S.C. § 1983 against the City be dismissed, and Mr. Waller's Motion for Leave to Amend be denied with respect to these five claims be denied, including but not limited to the additional theory for inadequate hiring.

### C.      Claim I Against Defendant Lovinger:  Excessive Force

In Mr. Waller's Original Complaint, he alleges that both Defendant Lovingier and the City violated his Fourth, Eighth, and Fourteenth Amendment rights by using excessive force against him.  [#1 at 35-36].  Defendant Lovingier moves to dismiss Plaintiff's excessive force claim against him to the extent it is purported to state a prayer for relief under the Fourth and Eighth Amendments.  [#21, at 4-7].  In response, Plaintiff argues that "Defendant Lovingier misreads Plaintiff's original Complaint [to state that] a judicial determination of probable cause had been made to hold Mr. Waller when Judge Burd was advising him when he was assaulted by Defendant Lovingier," and that under *Walton v. Gomez (In re Estate of Booker)*, 745 F.3d 405 (10th Cir. 2014), post-seizure claims of excessive force absent a probable cause determination are governed by the Fourth Amendment.[3]  [#44 at 8].  Plaintiff further asserts that "[w]hen Mr. Waller appeared before Judge Burd on September 11, 2012 he had been arrested for investigation of crimes against him.  Since it was a warrantless arrest, no probable cause determination had been made by at court prior to his arrest and Judge Burd did not make any probable cause determination."  [# 44 at 7].

---

[3] In *Walton*, the Court of Appeals for the Tenth Circuit reaffirmed that "the Fourth Amendment, not the Fourteenth, governs excessive force claims arising from treatment of [an] arrestee detained without a warrant and prior to any probable cause hearing."  *Walton*, 745 F.3d at 419.

Contrary to Mr. Waller's arguments, I am unable to find any plain factual statement in Plaintiff's Original or Proposed Amended Complaints alleging that Mr. Waller was seized absent probable cause prior to his advisement hearing before Judge Burd.  In the interest of judicial efficiency, I recommend that Defendant Lovingier's Motion to Dismiss as to this claim be granted, but that Mr. Waller be granted leave to amend his Original Complaint in a form clarifying that Mr. Waller had been arrested without a probable cause determination, and that no such determination had been made prior to the September 11, 2012 incident.

### D.      Claim II: Retaliation Claim

Claim II of Plaintiff's Original Complaint asserts that "Mr. Waller had a constitutional right under the Sixth Amendment to the United States Constitution to appear in court, to be advised of his rights including the right to be able to ask questions of the court without being brutally attacked, beaten and dragged from the courtroom" that was interfered with by Defendant Lovingier's alleged assault on Mr. Waller.  [#1, ¶ 126].  By its terms, the Sixth Amendment provides that:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

U.S. Const. Amend. VI. The rights enumerated therein do not facially implicate a "right to be able to ask questions of the court," and Plaintiff has not any alleged any facts allowing for a plausible inference that *e.g.* the alleged assault prevented Mr. Waller from being "informed of the nature and cause of the accusation" in the underlying prosecution that brought Mr. Waller before Judge Burd at the September 11, 2012 advisement hearing.  Therefore, dismissal of Claim

II as pled in Mr. Waller's Original Complaint against both Defendant Lovinger and the City is proper.

Plaintiff's Proposed Amended Complaint attempts to re-style Mr. Waller's Second Claim as both a First Amendment and Sixth Amendment deprivation. [#47, ¶¶ 115-32]. Even re-styled, Mr. Waller fails to allege any facts to support a policy or procedure resulting in First Amendment violations by the City. [#47 at ¶¶ 115-132]. Nevertheless, in view of the liberal policies governing amendment of pleadings and the absence of briefing by Defendants as to whether such amendment would be futile, I recommend that Plaintiff's Motion for Leave to Amend with respect to Claim II be granted only insofar as Plaintiff be permitted to assert such Second Claim against Defendant Lovingier based on a violation of Mr. Waller's First Amendment rights. In doing so, the court does not consider whether such amendment is ultimately viable in this action.

### E.    Claim IV:  Malicious Prosecution

In Claim IV, Plaintiff alleges that Defendant Lovingier, McCall and the City violated his Fourth, Fifth, Sixth, and Fourteenth Amendment rights by pursuing false charges against him. [#1 at ¶¶ 159-168]. Under the law of this circuit, in cases such as this "where criminal charges were brought but dismissed before trial, [a plaintiff] must allege a violation of the Fourth Amendment in order to proceed on a theory of § 1983 malicious prosecution." *Becker v. Kroll*, 494 F.3d 904, 919 (10th Cir. 2007). Moreover, a "'[v]iolation of the Fourth Amendment requires an intentional acquisition of physical control.'" *Id.* at 914 (quoting *Brower v. County of Inyo*, 489 U.S. 593, 596, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989)).

By Plaintiff's own account, Mr. Waller was already arrested and detained on other charges throughout the duration of the malicious prosecution alleged.  [#1 ¶¶ 2, 13, 162].[4] Conversely, there are no allegations that would suggest Mr. Waller's seizure was renewed or prolonged by the purported malicious prosecution complained of.  [#1, #46].  It remains well-established that a "[v]iolation of the Fourth Amendment requires an intentional acquisition of physical control," *Brower*, 489 U.S. at 599.  But Mr. Waller was already in custody, and he does not allege that his incarceration was altered or prolonged due to the charges brought against him. [#47].  "Because [plaintiff] was already effectively 'seized,' throughout the time period in question, it is doubtful whether the additional prosecution could result in a[] [constitutionally] actionable seizure."  *Turner v. Schultz*, 130 F.Supp.2d 1216, 1225 (D. Colo. 2001).  Accordingly, I find that Plaintiff has failed to state a viable malicious prosecution claim either in his Original Complaint or his Proposed Amended Complaint and I respectfully recommend that Defendants' Motions to Dismiss be granted and Plaintiffs' Motion for Leave to Amend be denied with respect to any malicious prosecution claim.[5]

---

[4] These allegations were not revised in Mr. Waller's proposed Amended Complaint.

[5] To overcome the defense of qualified immunity, a plaintiff must make a showing that both (1) the defendant's actions violated a federal constitutional or statutory right; and (2) the right was clearly established at the time of the conduct, *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Accordingly, Plaintiff's malicious prosecution claim, even in proposed amended form, fails to establish municipal liability as to the City or as against any individual Defendant in his or her official capacity.  In order for a constitutional right to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clear weight of authority from other circuits must establish the constitutional right.  *Medina v. City and Cnty. of Denver*, 960 F .2d 1493, 1498 (10th Cir. 1992).  I could find no Supreme Court or Tenth Circuit decision supportive of Plaintiff's position, nor is there a "weight of authority" from other circuits that could suffice to establish that malicious prosecution is a constitutionally cognizable tort absent an alleged physical taking arising out of the malicious prosecution.

F.      **Claim V:  Conspiracy**

Mr. Waller's final claim in the Original Complaint brought pursuant to 42 U.S.C. §§ 1983 and 1985 is that Defendants Lovingier and McCall conspired to a series of formal and informal policies and practices adopted by the City to deny Plaintiff and other African American/Black and/or Hispanic/Latinos of their constitutional rights.  [#1 at ¶¶ 169-174].  A Section 1983 conspiracy claim is a conspiracy to violate a constitutional right protected by 42 U.S.C. § 1983.  *Dixon v. City of Lawton, Okl.*, 898 F.2d 1443, 1449 n.6 (10th Cir.1990).  Section 1985(3) generally describes and provides redress for a conspiracy of two or more persons for the purpose of depriving of another of equal protection of the law, motivated by a class-based, invidiously discriminatory animus.  *Id.* at 1447.

"[T]o recover under a § 1983 conspiracy theory, a plaintiff must plead and prove not only a conspiracy, but also an actual deprivation of rights. . . ."  *Id.* at 1449.  To state such a claim, a plaintiff must allege specific facts showing an agreement and concerted action amongst defendants.  *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998).  Mr. Waller does aver specific factual allegations about an agreement between Defendants Lovingier and McCall to pursue unwarranted charges against him.  [#47 at ¶¶ 40-43].  But because the malicious prosecution claims as pled in Plaintiff's Original and Proposed Amended Complaints fail for the reasons stated above, Plaintiff's conspiracy claim based on malicious prosecution must also fail.

Any remaining allegations by Plaintiff sounding in conspiracy are not pled with the specificity required to state a cognizable Section 1983 conspiracy claim.  "[C]onclusory allegations that defendants acted in 'concert,' or 'conspired' without specific factual allegations to support such assertions are insufficient."  *Merritt v. Hawk*, 153 F. Supp. 2d 1216, 1225 (D.

Colo. 2001) (citation and quotation omitted).   Allegations such as "Defendants Lovingier and McCall did conspire and agree between and among themselves to a series of formal and informal policies and practices adopted by the Defendant, the City and County of Denver through its official and unofficial decision making channels" to deny Plaintiff and others their constitutional rights, [#1 at ¶ 170], are precisely the sort of conclusory allegations devoid of underlying factual support that are entitled to no weight in assessing whether a plaintiff has stated a plausible claim for relief.

Mr. Waller does not fare better with respect to a claim of conspiracy in violation of 42 U.S.C. § 1985(3).   To succeed on a § 1985(3) claim, a plaintiff must show:  (1) the existence of a conspiracy; (2) intended to deprive him equal protection under the laws or equal privileges and immunities of the laws; (3) resulting in an injury or deprivation of a federally-protected right; and (4) an overt act in furtherance of the object of the conspiracy.   *See Jemaneh v. Univ. of Wyoming*, -- F. Supp. 3d –, 2015 WL 1143038 at *18 (2015) (citations omitted).   As discussed above, the only specific allegations of a conspiracy relate to Mr. Waller's malicious prosecution claim.   The remaining allegations in the Original and Proposed Amended Complaints are too conclusory to support a § 1985(3) conspiracy based on excessive force or a violation of Mr. Waller's First Amendment rights, the only potential bases should the District Court adopt this Recommendation.   Indeed, even accepting Plaintiff's factual allegations as true, Defendant McCall did not contact Defendant Lovingier until after the September 11, 2012 incident that form the basis of Mr. Waller's constitutional claims, and therefore, could not have conspired with Defendant Lovingier to commit those acts.  [#47 at ¶ 40].

Accordingly, I recommend that Defendants' Motions to Dismiss be granted and that Plaintiff's Motion for Leave to Amend be denied as to Plaintiff's conspiracy claim.

### G.     Injunctive Relief

In his Original and Proposed Amended Complaint, Plaintiff seeks injunctive relief "[f]or the decades the Defendant the City and County of Denver has been incapable of stopping the use of excessive force by its law enforcement."  [#1 at ¶ 176].  Mr. Waller does not allege an imminent harm or threat to himself.  [#1 at ¶¶175-179; #47 at ¶¶187-192].   Under these circumstances to justify a demand for injunctive relief, a plaintiff must allege either that "(1) that all police officers in [in the relevant municipality] always [employ excessive force in the manner complained of as to] any citizen with whom they happen to have an encounter, whether for the purpose of arrest, issuing a citation or for questioning or, (2) that the [relevant municipality] ordered or authorized police officers to act in such manner." *City of Los Angeles v. Lyons*, 461 U.S. 95, 106 (1983).

Having reviewed Plaintiff's Original and Proposed Amended Complaints, I find no allegations sufficient to meet either predicate under *Lyons* as to Mr. Waller.  Moreover, for the reasons discussed above, I find that the joinder of Mr. Colbruno would be improper; as such, his potential standing to seek injunctive relief in an independent lawsuit is immaterial to this action. I accordingly recommend that the Original Complaint's injunctive relief claims be dismissed, and Plaintiff's Motion for Leave to Amend be denied, as to any demand for injunctive relief.

### CONCLUSION

Consistent with the reasons set forth herein, I respectfully RECOMMEND that:

(1)     Defendants McCall and the City and County of Denver's Motion to Dismiss [#22] be GRANTED;

(2)     Defendant Brady Lovingier's Motion to Dismiss [#21] be GRANTED;

(3)     Plaintiff's Motion for Leave of Court to File Amended Complaint [#46] be GRANTED IN PART, and DENIED IN PART, to the extent that Plaintiff be granted leave to amend his Original Complaint to assert claims pursuant to 42 U.S.C. § 1983, in the form asserted in the Proposed Amended Complaint, as follows:

    a.  Paragraphs 52, 59-73 and 75-103 of Plaintiff's Original Complaint be stricken;

    b.  With respect to Claim I against Defendant Lovingier, including additional factual allegations in support of his claim for excessive force, and clarifying that Mr. Waller had been arrested without a probable cause determination, and that no such determination had been made prior to the September 11, 2012 incident;

    c.  With respect to Claim II against Defendant Lovingier, based on a purported First Amendment violation; and

(4)     Plaintiff is ORDERED to tender a Second Amended Complaint with two counts of constitutional violations pursuant to 42 U.S.C. § 1983 against Defendant Lovingier, one for excessive force and one for retaliation based the exercise of First Amendment rights limited to the facts as asserted by the Proposed Amended Complaint.[6]

---

[6] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived

DATED:  April 20, 2015                    BY THE COURT:

                                          /s/ Nina Y. Wang
                                          United States Magistrate Judge

---

its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by
their failure to file objections, plaintiffs  waived their right to appeal the Magistrate Judge's ruling).  *But see*,
*Morales-Fernandez v. INS*, 418  F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the
interests of justice require review).