# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action 1:14-cv-02109-WYD-NYW

ANTHONY WALLER,

        Plaintiff,

v.

BRADY LOVINGIER, in his individual capacity,[1]

        Defendant.

_____

# **ORDER**
_____

Magistrate Judge Nina Y. Wang

      This matter comes before the court on Defendant Brady Lovingier's ("Defendant") Second Motion to Compel Fed. R. Civ. P. 35 Examination ("Motion for an IME") [#159, filed Mar. 29, 2016]. This motion was referred to the undersigned Magistrate Judge pursuant to the Order of Reference dated July 30, 2014 [#5], the Reassignment dated February 10, 2015 [#84], and the Memorandum dated March 30, 2016 [#160]. The court has reviewed the Parties'

---

[1] Although the Second Amended Complaint names Defendant Lovingier in his individual and official capacity as a deputy sheriff of the City and County of Denver, Senior Judge Daniel granted the City and County of Denver's Motion to Dismiss, which dismissed the injunctive relief sought by Plaintiff. [#117]. In the Second Amended Complaint, Plaintiff pleads two claims pursuant to 42 U.S.C. § 1983, one for excessive force in violation of the Fourth Amendment, and one for violation of his First Amendment rights; there is no demand for injunctive relief and no claim left against the municipality. [#121]. It is well-settled that "[o]fficial-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (citing *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690, n.55 (1978)). The Supreme Court further explained that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* (citation omitted). It is not a suit against the official personally, for the real party in interest is the entity. *Id.* Because the court has dismissed all municipality claims against the City and County of Denver, the appropriate remaining defendant is Brady Lovingier, solely in his individual capacity.

briefing, including Plaintiff's Response in Opposition to Defendant Brady Lovingier's Second Motion to Compel Fed. R. Civ. P. 35 Examination [#166], the entire docket, and the applicable case law. For the reasons set forth herein, the court rules as follows.

## BACKGROUND

The court recently recounted the procedural history of this case in its Orders dated March 8, 2016 [#149] and March 22, 2016 [#157]. The court repeats the previously-recited procedural history in this Order only to the extent necessary and pertinent to the present motions.

The present Motion for an IME follows a series of motions between the parties pertaining to an issue Defendant argues was raised for the first time in the designation of Plaintiff's affirmative expert. In particular, Defendant argues that Plaintiff's expert opined for the first time in his report that Mr. Waller suffers from pseudobulbar affect disorder.

The Parties propounded affirmative expert reports on February 1, 2016. [#140-1]. At that time, Plaintiff disclosed a report from Bennett I. Machanic, M.D. [*Id.* at 8]. In that report, Dr. Machanic opined that Plaintiff's "mental status is what is truly striking in spontaneous conversation suddenly without warning he begins crying and has actual tears. This occurs on multiple occasions and indeed very consistent not only with depression but also pseudobulbar affect disorder."[2] [*Id.* at 11]. Defendant contends, and Plaintiff has provided no evidence to dispute, that Mr. Waller's medical records produced prior to February 1, 2016 do not contain a diagnosis for pseudobulbar affect disorder, making it necessary for Defendant's medical expert

---

[2] Pseudobulbar affect disorder is a neurological condition characterized in a patient as intermittent spasmodic outbursts of emotion at inappropriate times or in the absence of any particular provocation. *See Avanir Pharm., Inc. v. Actavis S. Atl. LLC*, No. CA 11-704-LPS, 2012 WL 6019095, at *6 (D. Del. Dec. 3, 2012).

to perform an independent medical examination ("IME") in order to rebut this opinion.[3]  [#140 at ¶ 5, #143].

On February 19, 2016, prior to the deadline for exchanging rebuttal expert reports, Defendant moved the court for a modification of the Scheduling Order to extend the rebuttal expert deadline from March 1, 2016 to April 8, 2016 to allow for the designation of an expert "with experience in pseudobulbar affect disorder to review the file and complete an evaluation to determine if the medical history, neurologic injury and prior psychiatric history supports the diagnosis or if there are differential diagnosis issues that require evaluation."  [*Id.* at 3]. Defendant also indicated that its expert, Dr. Hal S. Wortzel, intended to perform an independent medical examination of Plaintiff.  [#140 at ¶ 6].  Plaintiff objected to the extension as prejudicial because: (1) it would extend the pretrial dates in this matter; (2) Defendant was diligent in pursuing an expert disclosure during the required time frame; and (3) Defendant did not properly seek an independent medical examination.

On March 8, 2016, this court issued an Order granting in part Plaintiff's motion for modification of the Scheduling Order regarding the deadline for rebuttal expert disclosures.  *See* [#149].  The court granted an extension of the rebuttal expert deadline from March 1, 2016 to April 8, 2016, solely for the purpose of allowing Defendant's expert, Dr. Wortzel, to rebut the expert opinions of Plaintiff's expert, Dr. Bennett I. Machanic.  However, the court found that Defendant would be required to submit a separate motion that met the requirements of Fed. R. Civ. P. 35 to the extent that Defendant would like its expert to perform an independent medical examination ("IME") of Plaintiff.  *See* [#149 at 10].  The court directed Defendant to file any such motion on or before March 10, 2016.  Defendant then filed a Motion to Compel Fed. R.

---

[3] Plaintiff's expert's opinion appears to be based almost exclusively on Plaintiff's expert's own medical examination of Plaintiff, as opposed to a review of written records.

Civ. P. Examination on March 10, 2016, requesting that Dr. Wortzel be permitted to perform the IME on Mr. Waller on March 25, 2016. [#151].

On March 21, 2016, Defendant filed a Second Motion for Extension of Rebuttal Expert Deadline. [#155]. In this motion, Defendant represented that Dr. Wortzel had identified a potential conflict that precludes him from serving as an expert in the present case. *See* [#155 at 3]. In particular, Dr. Wortzel stated that it is clear that Mr. Waller is a veteran receiving treatment at the Denver Veteran's Administration ("VA"), and that due to the nature of his symptoms, diagnoses, and/or complaints, there is a substantial likelihood that he would be referred to one of the services that Dr. Wortzel directs. [*Id.*]. Mr. Wortzel explained that due to the sub-specialty and niche nature of the work and services he provides, he was concerned that there would not be any other providers at the VA who could render similar services to Mr. Waller. [*Id.*]. Due to Dr. Wortzel's perceived conflict of interest, Defendant identified a second expert, Dr. Stephen Moe, who could perform the proposed IME on Plaintiff.

On March 22, 2016, this court entered an Order denying the first Motion to Compel an IME by Dr. Wortzel as moot and granting Defendant's Motion to Modify the Scheduling Order Regarding Rebuttal Expert Disclosures. [#157 at 7]. In the Order, the court directed Defendant to file a second motion for an IME directed specifically to the IME which Defendants request that Dr. Moe perform. [*Id.*]. Plaintiff objected to the March 22 Order, and the presiding judge, the Honorable Wiley Y. Daniel, overruled that objection on April 7, 2016. [#167]. This second motion for an IME pertaining to Dr. Moe's proposed examination is currently pending before the court. *See* [#159, filed Mar. 29, 2016].

# ANALYSIS

Defendant requests that the court enter an order permitting Dr. Stephen Moe to perform a neuropsychiatric examination on Mr. Waller. *See* [#159 at 5]. Mr. Waller opposes this request for an IME, arguing that there has been no showing that a Rule 35 examination is necessary to rebut Plaintiff's expert Dr. Machanic's opinions and Defendant has not established good cause. *See* [#166 at 2].

Rule 35 of the Federal Rules of Civil Procedure provides that a court may order an independent medical examination of a party where the party's mental or physical condition "is in controversy." Fed. R. Civ. P. 35. Rule 35 requires an affirmative showing by the moving party that each condition as to which the examination is sought is really and genuinely in controversy and good cause exists for ordering each particular examination. *See Schlangenhauf v. Holder*, 379 U.S. 104, 118 (1964). "Good cause" indicates that the showing is more than mere relevance, and is not merely a formality. *Id.* Rather, the court weighs the need for information against the individual's right to privacy. *Id.* The decision to grant or deny a Rule 35 examination is committed to the sound discretion of the court. *See Simpson v. Univ. of Colorado*, 220 F.R.D. 354, 362 (D. Colo. 2004). Because the "in controversy" and the "good cause" requirements often implicate the same factors, the court may consider both issues together. *Id.* "While Rule 35 should be construed liberally in favor of granting discovery, its application is left to the sound discretion of the court." *Id.* (internal citations omitted). *See Bethel v. Dixie Homecrafters, Inc.*, 192 F.R.D. 320, 322 (N.D.Ga. 2000) (noting that the "factors reviewed in determining 'good cause' often merge with those requirements necessary to find that a plaintiff's mental condition is 'in controversy'"). Mr. Waller has alleged specific psychiatric conditions and Plaintiff's expert, Dr. Machanic, issued an expert report in which he found that Mr. Waller has developed a

neurologic disorder described as pseudobulbar affect disorder. *See* [#140-1 at 11]. The court finds good cause for the proposed IME, as Defendant has met his burden to show that it is necessary to rebut the opinion of Plaintiff's expert. *See Eckman v. Univ. of Rhode Island*, 160 F.R.D. 431, 434 (D.R.I. 1995). Moreover, the record reflects that Dr. Machanic's opinion is based on his own examination of Mr. Waller, which took place on January 28, 2016. *See* [#140-1 at 8].

Mr. Waller argues that Defendant has not shown good cause for the proposed IME because of Defendant's delay in seeking this examination. *See* [#166 at 5]. This court disagrees. To the contrary, as the court has already found, this IME was necessitated by Mr. Waller's own failure to disclose this medical condition during discovery until designation of his affirmative expert. Since that time, Defendant retained an expert to perform this examination, but that expert subsequently identified a conflict of interest, necessitating the hiring of a second expert. Nor is the court convinced by Mr. Waller's argument that Defendant should have retained a different expert who hypothetically could have performed an IME at an earlier date. Mr. Waller makes no attempt to identify any such expert who would have been both qualified and had the schedule availability to do so. Nor does the court find on the record before it that Defendant was deliberately attempting to prolong the rebuttal expert period. Accordingly, the court does not find that the timing of this request for an IME, under the circumstances as they exist in this case, warrants a finding of a lack of good cause.

The "court retains considerable discretion to establish the manner, conditions and scope of the examination." *Simpson*, 220 F.R.D. at 363. Mr. Waller argues that the 4-hour scope of the proposed examination of Dr. Moe far exceeds what is necessary to submit a rebuttal opinion to Dr. Machanic's opinion *See* [#166 at 8]. Defendant represents that Dr. Moe's proposed

examination would last from between 3-4 hours. Mr. Waller does not identify a specific basis for his belief that this examination should only take some amount of time less than 3-4 hours, but seems to base his argument in this regard only on his speculation and his concern that he was previously led to believe that Dr. Moe would not perform any neuropsychiatric testing on him. *See* [#166 at 9]. On the basis of the information provided by Defendant regarding the substance of the examination, this court finds that the length of the examination proposed by Defendant is reasonable. *Cf. Simpson*, 220 F.R.D. at 363 ("The court is not qualified, by training or experience, to second-guess the professional judgment of a board-certified psychiatrist with 15 years of experience."). However, the court specifically advises the Parties that the examination may not exceed four hours.

The court also notes that Mr. Waller expresses concerns that the scope of Dr. Moe's proposed examination extends beyond what is necessary to rebut Dr. Machanic's opinions and that Dr. Moe will use this examination to opine on issues beyond the proper scope of rebuttal. *See* [#166]. To the extent that Defendant's rebuttal expert disclosures include information and arguments that go beyond the scope of rebuttal, Mr. Waller may then seek appropriate relief from the court, including an order excluding such information and opinions. However, this court cannot make any determination regarding whether Dr. Moe's examination exceeds the scope of the affirmative report in a vacuum.

Mr. Waller also argues that it is not proper for a retained expert to perform a Rule 35 examination. *See* [#166 at 9-10]. The court finds this argument unpersuasive, particularly since Mr. Waller submitted himself to a similar examination of his own expert witness to facilitate his own expert's initial expert report. Mr. Waller may cross-examine Dr. Moe regarding his

perceived bias as a witness for the Defendants to the extent that he is concerned about Dr. Moe's inability to present unbiased opinions stemming from the IME.

Finally, Mr. Waller requests that if the examination is allowed, that the examination be supervised. [#166 at 10]. Mr. Waller requests that his attorney be present or that the examination be tape recorded and a transcript of the tape recording be provided to him. [*Id.*]. Having found not exceptional circumstances that warrant the observation by a third party, the court denies Mr. Waller's request to have his attorney present at the IME or to have it recorded. *See Douponce v. Drake*, 183 F.R.D. 565, 567 (D. Colo. 1998) (denying Plaintiff's request for a third party's presence and tape recording during an IME); *Dillon v. Auto-Owners Ins. Co.*, No. 14-cv-00246-LTB-MJW, 2014 WL 4976315, at *2 (D. Colo. Oct. 6, 2014) (same).

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1) Defendant Brady Lovingier's Second Motion to Compel Fed. R. Civ. P. 35 Examination [#159] is **GRANTED**;

(2) The court will grant Defendant's request to perform an IME on Plaintiff Anthony Waller, consistent with the following guidelines.[4]

> **Date of examination**: Between the hours of 9:00 a.m. and 5:00 p.m on a date to be agreed on by the Parties
> **Time**: Not to exceed 4 hours.
> **Location**: 7777 East 1st Place, Suite 106-C Denver, CO 80230
> (720) 532-0460
> **Type of Examination**: Neuropsychiatric examination
> **Examiner**: Stephen A. Moe, M.D.

---

[4] The court recognizes that Defendant requested the IME proceed yesterday. [#159 at 13]. To the extent that Dr. Moe did not examine Plaintiff on April 11 by agreement, the requirements for the examination are set forth herein.

(3)	The deadline for Defendant to propound a rebuttal expert report addressing pseudobulbar affect disorder is extended up to and including **April 27, 2016**.  No further extensions to this deadline will be granted absent extraordinary circumstances.

DATED:  April 12, 2016	BY THE COURT:

s/ Nina Y. Wang_____
United States Magistrate Judge